**PEROXIDE CHEMICAL CO. v. SHEEHAN,**
Collector of Internal Revenue.
No. 11462.

Circuit Court of Appeals, Eighth Circuit.
Dec. 26, 1939.

Forrest C. Donnell, of St. Louis, Mo. (Thomas F. McDonald, of St. Louis, Mo., on the brief), for appellant.

John J. Pringle, Jr., Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Donald J. Marran, Sp. Assts. to Atty. Gen., and Harry C. Blanton, U. S. Atty., of Sikeston, Mo., on the brief), for appellee.

Before THOMAS and VAN VALKEN-BURGH, Circuit Judges, and DEWEY, District Judge.

VAN VALKENBURGH, Circuit Judge.

The appellant is a Missouri corporation which manufactures and sells prepara-tions of Hydrogen Peroxide of different strengths, the stronger being commonly known as 17 and 20 Volume Peroxide, and the weaker as 10 and 12 Volume Peroxide. No. 12 was sold under the trade name of "Thymolox". Appellant's manufactory and place of business is at St. Louis in the State of Missouri, and the appellee is, and at all times hereinafter mentioned was, the Collector of Internal Revenue for the First District of Missouri at said City of St. Louis.

The Revenue Act of 1932, Ch. 209, 47 Stat. 169, 261, § 603, 26 U.S.C.A. following section 1481, provides as follows:

"Sec. 603. Tax on Toilet Preparations, etc.

"There is hereby imposed upon the fol-lowing articles, sold by the manufacturer, producer, or importer, a tax equivalent to 10 per centum of the price for which so sold: Perfumes, essences, extracts, toilet waters, cosmetics, petroleum jellies, hair oils, pomades, hair dressings, hair restora-tives, hair dyes, tooth and mouth washes (except that the rate shall be 5 per cen-tum) * * *, tooth pastes (except that the rate shall be 5 per centum); aromatic cachous, toilet soaps (except that the rate shall be 5 per centum), toilet powders, and any similar substance, article, or prepara-tion, by whatsoever name known or dis-tinguished; any of the above which are used or applied or intended to be used or applied for toilet purposes".

Under this Act the Secretary of the Treasury, by virtue of the authority in him vested, promulgated Treasury Regula-tions 46 of which the following is a part:

"Art. 22. Scope of Tax.—The tax at-taches to the sale by the manufacturer of the articles enumerated in Section 603 and similar articles commonly or commer-cially known as toilet articles, which are used or applied, or intended to be used or applied, for toilet purposes. Any article advertised or held out to be suitable for toilet purposes or for any purposes for which the articles enumerated in the Act are customarily used, will be subject to the tax, regardless of the name by which it may be known or distinguished. The tax attaches to the sale by the manufac-turer of all preparations which are used or applied or intended to be used or applied for toilet purposes or used in connection with the bath or care of the body, or ap-plied to the clothing as a perfume or to the body as a toilet article. The fact that any particular product, preparation, or sub-stance coming within the scope of the Act may have, or to be held out to have, a medicinal, stimulating, remedial, or cur-ative value does not exempt it from the tax if it is commonly used as an adjunct to the toilet or for toilet purposes".

On or about October 5, 1936, appellee sent to appellant a notice of assessment and demand for payment of tax on the sale of Hydrogen Peroxide and Thymolox in the amount of $5,256.20, and interest thereon in the amount of $843.31, making a total of $6,099.51. On October 6, 1936, appellant paid this tax under protest in the sum last named, and now seeks to re-cover it back with interest from that date. A jury was waived and the trial court, making findings of fact and conclusions of law, entered judgment in favor of de-fendant-appellee. It was stipulated at the trial that this principal tax, in the sum of $5,256.20, was made up of the following items:

(1). On sales of Ten Volume Hy-drogen Peroxide the sum of $3,220.25; (2) on sales of Thymolox (Twelve Volume Hydrogen Peroxide) the sum of $95.65;

308

(3) on sales of Seventeen and Twenty Volume Hydrogen Peroxide, the sum of $1,683.15; (4) on sales of miscellaneous items, the sum of $257.15. It was also stipulated that when the decision of the court should be reached, counsel would have the interest computed and prorated on the above amounts of tax. At the hearing before us, counsel abandoned the contention of appellant on item No. 3 (sales of Seventeen and Twenty Volume Hydrogen Peroxide). It is, therefore, deemed unnecessary to discuss this item further than to say that an examination of briefs and record convinces that the judgment with respect to that item should be sustained, absent the concession of counsel. Appellant does not contend that it is entitled to recover the tax on miscellaneous items. The contentions of appellant are in substance confined to a consideration of items (1) and (2). In their brief counsel assign eight points intended to be relied upon and urged. Of these points six and seven relate to 17 and 20 Volume Hydrogen Peroxide, which need not further be considered for reasons hereinbefore stated. The remaining six points present substantially the following contentions:

1. The articles known as 10 and 12 Volume Hydrogen Peroxide are not embraced in one of the classifications mentioned in Section 603 of the statute, are medicinal preparations, and are not used or applied, or intended to be used or applied, for toilet purposes.

2. It is urged that the finding that the 10 and 12 Volume Hydrogen Peroxide were, during the taxable period, used or applied, or intended to be used or applied, for toilet purposes, is founded solely on advertising prior to the taxable period. This assignment is directed particularly against finding Number VI, to-wit: "That plaintiff changed its advertising subsequent to the enactment of the statute involved by discontinuing to recommend 10 and 12 Volume Hydrogen Peroxide as an efficient preparation for bleaching hair. But the reputation of the product was then established. Common knowledge of the meaning of the term 'Peroxide Blonde' is evidence of that fact".

3. The substantive contention is that, with respect to said 10 Volume and 12 Volume Hydrogen Peroxide, the judgment is not based on substantial evidence.

In addition to finding VI, already quoted, the trial court found: "That prior to the tax period involved, the plaintiff widely advertised its 10 Volume Peroxide as beneficial for sallow complexion, pimples, after-shaving lotion, mouth-wash, and for use in bleaching the hair and bleaching the nails in the process of manicuring. That such use was not an incidental use. That plaintiff's product known as 10 Volume Peroxide is capable of and is designed to make more attractive the human hair, skin and fingernails. It was so advertised by the plaintiff."

■ That during the taxable period Volume 10 Peroxide was advertised by appellant as a mouth-wash, shaving lotion, for use on the face for pimples and unsightly skin, and as a gargle. 12 Volume Peroxide (Thymolox) is also advertised on the carton as a shaving lotion. Both 10 and 12 Volumes are recommended for use after shaving to prevent face soreness. The trial court found both these Volumes cosmetics, hair dyes and toilet preparations within the meaning of Section 603 of the Revenue Act of 1932, and taxable accordingly. That prior advertisements described these preparations for uses falling within the terms of this Section is not denied. That their inherent nature is not changed, and that they are fully adapted to the same uses as formerly cannot well be disputed. The trial court therefore could not be expected to find that the preparation was not what appellant had previously said it was in its advertisements. Red Star Yeast & Products Co. v. La Budde, 7 Cir., 83 F.2d 394. That they are still advertised for purposes well within the purview of the Act is equally plain. It is probably true that these preparations have some medicinal value; but, as said in Article 22 of Treasury Regulations 46 above quoted, "the fact that any particular product, preparation, or substance coming within the scope of the Act may have, or to be held out to have, a medicinal, stimulating, remedial, or curative value does not exempt it from the tax if it is commonly used as an adjunct to the toilet or for toilet purposes". The uses here invited are not merely incidental medicinal uses; they are common adjuncts to the daily toilet, intended to be used in connection with the care of the body. As found by the trial court, the taxable character of a product is not changed by testimony that it is not so effective as represented. The nature of "toilet purposes" contemplated by the Act is quite specifically indicated by its terms.

Any preparation which is intended to affect, and, conceivably, to improve, the bodily appearance is included. Hair dressings, hair restoratives, tooth and mouthwashes, and dentifrices, are named. All are employed in perfecting the daily toilet. One could scarcely maintain that the daily shave is not generally regarded a toilet necessity, nor that a lotion intended to contribute to the health and appearance of the skin is not a toilet preparation within the terms of the Act, by whatsoever name that preparation is designated.

The record in this case is long, and able counsel have labored assiduously to bring out the qualities which they contend distinguish these Peroxides from the toilet preparations contemplated by this explicit revenue statute. We believe that the evidence adduced sufficiently supports the findings and conclusions reached by the trial judge; and that what has already been stated makes it unnecessary and undesirable to expand this opinion by a more extended recital of the testimony. The judgment, accordingly, is affirmed.